IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| LYNN MARIE AMASON, ) | Civil Action No. 3:10-1752-MJP-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | **AND** |
| PK MANAGEMENT, LLC, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Defendant. ) | |
| ) | |

     Plaintiff, Lynn Marie Amason, filed this action in the Court of Common Pleas for Richland County, South Carolina. Defendant, PK Management, LLC, removed this action to this court on July 6, 2010. Plaintiff alleges claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII").[1] She also alleges various claims under South Carolina law. On July 7, 2010, Defendant filed a motion to dismiss Plaintiff's claims for wrongful termination, breach of contract accompanied by fraud, and intentional infliction of emotional distress ("IIED"). Plaintiff filed a response on July 26, 2010, and Defendant filed a reply on August 5, 2010. Plaintiff also filed two motions to amend.

## **MOTIONS TO AMEND**

     On July 30, 2010, Plaintiff filed a motion to amend her complaint in light of Defendant's motion to dismiss. Defendant argues that the motion to amend should be denied because it is futile,

---

[1] Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(g) DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

as Plaintiff still fails to state a claim as to the three claims (wrongful termination, breach of contract accompanied by fraud, and IIED) in dispute.

As Plaintiff filed her motion to amend more than 21 days after the answer and it is opposed by Defendant, she may only amend with the court's leave. See Fed. R. Civ. P. 15.[2] Although Rule 15(a) mandates that leave to amend pleadings should be granted freely where justice requires, "[m]otions to amend are committed to the discretion of the trial court." Keller v. Prince George's County, 923 F.2d 30, 33 (4th Cir. 1991). Delay alone is not sufficient reason to deny leave to amend, but must be accompanied by prejudice, bad faith, or futility. See Foman v. Davis, 371 U.S. 178 (1962); Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986); Albrecht v. Lund, 845 F.2d 193, 195 (9th Cir.), modified, 856 F.2d 111 (9th Cir. 1988)("if a complaint is dismissed for failure to state a claim upon which relief can be granted, leave to amend may be denied, even if prior to a responsive pleading, if amendment would be futile").

Plaintiff is attempting to make a more definite statement in light of Defendant's motion to dismiss. Defendant appears to argue that amendment should not be allowed based on futility for the same reasons asserted in its motion to dismiss. Here, the motion to amend should be allowed in

---

[2]Rule 15 provides, in part:
(1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course within:
    (A) 21 days after serving it, or
    (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
(2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.
Fed. R. Civ. P. 15.

2

the interest of justice. Plaintiff is attempting to make her claims more clear and does not appear to have delayed the motion to amend. Defendant has not shown that it would be prejudiced by amendment. Plaintiff's motion to amend (Doc. 8) is, therefore, granted.

On September 3, 2010, Plaintiff filed a second motion to amend her complaint. She proposes to add causes of action under the South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10 et seq. ("SCPWA"), and the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"). Defendant argues that Plaintiff should not be allowed to amend to add the SWPWA claim because it is futile.[3] Defendant argues that Plaintiff cannot assert a claim under the SWPWA for payment of overtime wages because the SWPWA is devoid of any references to overtime, has no bearing on overtime wages allegedly owed to an employee, and federal law (the FLSA) governs this issue.

Plaintiff's attempt to add a claim under the SCPWA is futile. The FLSA provides that nonexempt workers who work more than 40 hours during a work week are entitled to a "rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). The exclusive remedies available to enforce legal rights created by the FLSA are the statutory remedies provided therein. See Anderson v. Sara Lee Corp., 508 F.3d 181, 192-194 (4th Cir. 2007)(emphasizing that the FLSA "mandates that covered workers...receive overtime compensation" and holding that "Congress prescribed exclusive remedies in the FLSA for violations of its mandates"); Nimmons v. RFC Ins. Holdings (USA) Inc., No. 6:07-cv-2637, 2007 WL 4571179 (D.S.C. Dec. 27, 2007)(D.S.C. 2007)(granting Defendant's Rule 12(b)(6) motion and stressing that "Plaintiff's state law claims related to alleged overtime must be dismissed because they assert rights that are duplicative of those protected by the FLSA"); Westfall v. Kendle Int'l, CPU, LLC, No.

---

[3]Defendant does not oppose amendment for the purpose of adding the FLSA claim.

3

1:05-cv-00118, 2007 WL 486606 (N.D.W.Va. Feb. 15, 2007)(ruling that as a matter of law, the "applicable law to recover overtime pay" is the FLSA and thus "the plaintiff may not pursue her claim for overtime" under the West Virginia wage payment statute).

In her opposition memorandum (Doc. 23), Plaintiff argues that the SCPWA claim is not futile because the FLSA expressly permits the SCPWA claim, she received notice in Defendant's Handbook when she was hired that she would be paid one and one-half times her regular rate of pay if she worked overtime, and because other circuits have found that state law claims are not preempted by the FLSA. In her second amended complaint, Plaintiff has not alleged an obligation to pay her one and one-half times her regular rate of pay that arose from anything other than the FLSA. Plaintiff has not pointed to anything in the SCPWA that independently confers any obligation to pay one and one-half times the regular rate of pay.[4] Plaintiff argues that Defendant's Employment Handbook required that these wages be paid, but she did not reference Defendant's Employment Handbook in her second amended complaint and did not attach it to the second amended complaint. Therefore,

---

[4]The SCPWA provides:
Every employer shall notify each employee in writing at the time of hiring of the normal hours and wages agreed upon, the time and place of payment, and the deductions which will be made from the wages, including payments to insurance programs. The employer has the option of giving written notification by posting the terms conspicuously at or near the place of work. Any changes in these terms must be made in writing at least seven calendar days before they become effective. This section does not apply to wage increases.
S.C. Code Ann. § 41-10-30. Wages are defined as:
all amounts at which labor rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or other method of calculating the amount and includes vacation, holiday, and sick leave payments which are due to an employee under any employer policy or employment contract....
S.C. Code Ann. § 41-10-10.

4

Plaintiff's second motion to amend is granted in all respects, except as the motion to add a claim under the SCPWA (Sixth Cause of Action).

## FACTS IN THE LIGHT MOST FAVORABLE TO PLAINTIFF[5]

1. Defendant is a national management company incorporated in California with a corporate office in Greenville, South Carolina. It formerly operated under the name Coldwater Management, LLC.

2. Plaintiff began employment with Defendant on or about December 26, 2007, as a Property Manager in Columbia, South Carolina. She took the position on the promise that she would be promoted to Senior Property Manager within three months.

3. On or about January 2008, Plaintiff was visited by Defendant's Maintenance Director who stated that he came to see the new property manager who "was so good looking." In a telephone conversation on February 18, 2008, the Maintenance Director told Plaintiff in a sexually suggestive manner that he "had something for her for her birthday." The Maintenance Director then stated that he "had better stop before he got fired" and Plaintiff replied "that's right." Plaintiff reported the incident to her direct supervisor.

4. Beginning in February 2008, Plaintiff was subjected to constant daily sexual propositions from a male co-worker, the Columbia Maintenance Technician. This included requests for sexual favors and explicit comments regarding her body parts. Plaintiff reported this unwanted conduct to her regional supervisor and her supervisor who is the Vice President for Defendant.

---

[5] These facts are taken from the second amended complaint ("AC2").

5.  Residents of the residential property that Plaintiff managed also made complaints to Defendant's Vice President about the sexual harassment by these individuals.

6.  No action was taken on these allegations and the harassment continued.

7.  On or about February 25, 2008, Plaintiff's direct supervisor offered her a promotion to the position of "Senior Property Manager." Plaintiff wanted to get the Columbia property straightened out before handing it over to another site manager.

8.  The Columbia Maintenance Technician remarked on Plaintiff's physical attributes. Plaintiff warned him that this was inappropriate.

9.  On or about March 26, 2008, Plaintiff contacted her supervisor and indicated that she thought the Columbia site was reasonably stable and that she was ready to be promoted.

10. On or about April 4, 2008, Plaintiff discussed the promotion with her supervisor again. The supervisor specifically told Plaintiff that she was doing a good job.

11. The Columbia Maintenance Technician continued making inappropriate sexual advances toward Plaintiff and was verbally warned again.[6] Plaintiff notified her supervisor about this conduct.

12. On approximately April 13, 2008, Plaintiff was contacted by her supervisor and the Vice President and told she was being promoted to Senior Property Manager over the Columbia, Walterboro, Manning, and Orangeburg properties.

13. After about a week, Plaintiff asked her supervisor when she could begin interviewing to fill the on-site manager position in Columbia. She was told by her supervisor that she would

---

[6]Plaintiff does not specify, but it appears that she was the one who warned the Maintenance Technician.

        have to cover the position for a little while, but that a new manager for Columbia would be hired.

14.     On or about April 24, 2008, Plaintiff received a Human Affairs Complaint from a resident who claimed she was discriminated against and overcharged for her rent based on a company form relating to her income. The complaint was faxed to Plaintiff's direct supervisor who assisted Plaintiff in responding to the complaint. A copy of the response was faxed back to Plaintiff's direct supervisor and the Defendant's Vice President. The investigation by Human Affairs also resulted in multiple telephone conversations between Human Affairs, Plaintiff, and Plaintiff's supervisor.

15.     On June 25, 2008, Plaintiff was the only female in a group of nine male co-workers when the Maintenance Director began talking in a sexually explicit manner (including discussing female anatomy) in Plaintiff's presence with a co-worker. Plaintiff told the co-worker he was disgusting and left the area.

16.     On July 22, 2008, Defendant's Vice President contacted Plaintiff in relation to the resident's Human Affairs Complaint. Plaintiff requested a check for the overpaid funds for the resident and the Vice President screamed at her, cursed her, threatened, and verbally abused her. The Vice President then scheduled an on-site inspection/visit for no apparent reason.

17.     On July 23, 2008, Defendant's Vice President performed a site inspection of Plaintiff's Columbia property and indicated that she was "impressed" and the site "looked better than it ever had."

18. Defendant's Vice President verbally abused (using profanity) and threatened Plaintiff in an attempt to intimidate Plaintiff. Plaintiff claims this was done in retaliation for her reporting harassment.

19. Defendant's Vice President refused to reimburse Plaintiff for damages to her vehicle which was on Defendant's property and damaged by a tenant who was being evicted.

20. Plaintiff was forced by the Vice President to perform the work load of multiple individuals and refused to allow Plaintiff to hire an assistant or hire on-site property managers when she was made Senior Property Manager in an attempt to harass Plaintiff and force her resignation. Similarly situated employees had assistants. Plaintiff claims this was done in retaliation for her reporting of sexual harassment and a hostile work environment.

21. On or about July 25, 2008, Plaintiff was terminated and given no reason for her termination. When she applied for unemployment, the Vice President claimed that Plaintiff was terminated for the resident complaint discussed above. Plaintiff claims this reason was false and Defendant's Vice President knew that this was false.

22. Plaintiff was hired as a "property manager" and informed she would be paid $36,000 a year, without regard for hours worked. She was required to work in excess of 40 hours a week and 80 hours bi-weekly. Plaintiff was required to submit a timecard to headquarters and to state that she worked 8 hours a day. Any timecard stating time in excess of 40 hours a week was rejected and/or refused by Defendants.

23. Plaintiff was classified by Defendant's human resources representative as being "non-exempt" on or about December 2007, based on personnel forms.

24. When Plaintiff was promoted to senior property manager she was paid a set salary of $42,000 a year and was required to submit time cards incorrectly reflecting she worked 8 hours a day, 40 hours a week, and 80 hours in a bi-weekly time period, even though she worked more than 40 hours a week.

25. After her promotion, Plaintiff was working the positions of property manager of the Columbia property, which required more than 40 hours a week, and the position of senior property manager overseeing the Columbia, Walterboro, Manning, and Orangeburg properties.

26. Defendant was aware these were two job positions, but refused to hire a replacement for the property manager position. Additionally, Defendant refused to accept a time card submission of actual hours worked, requiring incorrect time card submissions of 40 hours a week.

**STANDARD FOR MOTION TO DISMISS**

Rule 8(a) of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When considering a 12(b)(6) motion to dismiss, the court must accept as true the facts alleged in the complaint and view them in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999). The United States Supreme Court has stated that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, __ U.S. __, __, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although "a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.  Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" Iqbal, __ U.S. at __, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 557).

## DEFENDANT'S MOTION TO DISMISS

Defendant contends that Plaintiff's claims for wrongful termination, breach of contract accompanied by fraud, and IIED should be dismissed.  Plaintiff argues that she has set forth plausible claims that should not be dismissed.

    A.    <u>Wrongful Termination (Third Cause of Action)</u>

Plaintiff alleges that she was terminated from her position without good cause and the termination constituted wrongful discharge because:

> a. the termination was arbitrary, discriminatory, and unfair, in that such termination was not based on a fair, objective, uniform and reasonable standard;
>
> b. the termination breached an employment contract between the parties and the implied covenant of good faith and fair dealing;
>
> c. the termination breached an implied contract between the parties and the implied covenant of good faith and fair dealing;
>
> d. the termination was in violation of public policy.

AC2 at 10.  Defendant argues that this claim should be dismissed because Plaintiff's exclusive remedy lies under Title VII and she has not alleged that Defendant's alleged actions were in violation of the "clear mandate of public policy" as required by Ludwick v. This Minute of Carolina, Inc., 337 S.E.2d 213 (S.C. 1985).

"Where the retaliatory discharge of an at-will employee constitutes violation of a clear mandate of public policy, a cause of action in tort for wrongful discharge arises." Ludwick v. This Minute of Carolina, Inc., 337 S.E.2d at 216. In Ludwick, the employee was discharged from her employment because she chose to testify before the South Carolina Employment Security Commission (and avoid criminal penalties for failing to testify) pursuant to a subpoena. Id. at 214, 216. The Fourth Circuit has stated that the Ludwick exception is to be narrowly applied. Merck v. Advanced Drainage Systems, 921 F.2d 549, 554 (4th Cir. 1990). The South Carolina Supreme Court has only recognized public policy claims in cases where an employer forced an employee to violate the law such as in Ludwick, or the termination itself was a violation of criminal law such as in Culler v. Blue Ridge Elec. Coop., Inc., 422 S.E.2d 91 (S.C. 1992). Additionally, in Epps v. Clarendon County, 405 S.E.2d 386 (S.C. 1991), the Supreme Court of South Carolina declined to extend the public policy exception of Ludwick where an employee already had "an existing remedy for a discharge [Epp's claim that he had been terminated in violation of his constitutional right to free speech and association was actionable under 42 U.S.C. § 1983] which allegedly violates rights other than the right of employment itself." Id. at 387, see also Lawson v. South Carolina Dep't of Corrs., 532 S.E.2d 259, 261 (S.C. 2000)(where statute creates a substantive right and provides a remedy for infringement of that right, the plaintiff is limited to that statutory right); Dockins v. Ingles Markets, Inc., 413 S.E.2d 18, 19 (S.C. 1992).

Here, Plaintiff has not alleged a plausible claim that she was terminated in violation of the clear mandate of public policy because she has not alleged that she was forced to violate a criminal law or that her termination itself was a violation of criminal law. She also may not pursue a claim for wrongful termination in violation of public policy based on an alleged Title VII violation because

11

in South Carolina a "public policy" claim can only be maintained in the absence of a statutory remedy. Palmer v. House of Blues Myrtle Beach Rest. Corp., No. 05-3301, 2006 WL 2708278, at * 3 (D.S.C. Sept.20, 2006)("When a statute creates a substantive right and provides a remedy for infringement of that right, the Plaintiff is limited to that statutory remedy"), citing Lawson v. South Carolina Department of Corrections, 532 S.E.2d 259 (S.C. 2000); Gleaton v. Monumental Life Ins. Co., 719 F.Supp.2d 623, 2010 WL 419921 at *2 (D.S.C. Jan.28, 2010); Heyward v. Monroe, No. 97-2430, 1998 WL 841494, at * 4 (4th Cir. Dec.7, 1998) (affirming dismissal of the plaintiff's public policy termination claim because: "South Carolina permits an action under the public policy exception when an at-will employee is terminated for refusing to violate the law. It has not been extended to circumstances where there is a statutory remedy for employment discrimination, as in this case"); Zeigler v. Guidant Corp., No. 07-3448, 2008 WL 2001943 at * 2 (D.S.C. May 6, 2008)("The Ludwick exception to at-will employment is not designed to overlap an employee's statutory rights to challenge a discharge, but rather to provide a remedy for a clear violation of public policy where no other reasonable means of redress exists.").

  B.  <u>Breach of Contract Accompanied by Fraud (Fourth Cause of Action)</u>

  Plaintiff alleges that:

[a.] The Defendant made specific promises to the Plaintiff regarding her employment; and said promises constitute an enforceable contract under South Carolina common law.

[b.] The Defendant by and through its agents and employees, intentionally violated the above contract and agreement and concocted fraudulent reasons to support its reasoning for breaching its contractual obligations to the Plaintiff.

AC2 at 11. Defendant contends that this claim should be dismissed because she failed to allege any of the material elements required to establish the existence of a valid and enforceable contract and failed to allege the existence of any fraudulent activity by Defendant.

In order to show a breach of contract accompanied by a fraudulent act under South Carolina law, a plaintiff must show: (1) a breach of contract; (2) fraudulent intent relating to the breach of the contract and not merely to its making; and (3) a fraudulent act accompanying the breach. See Aiken County v. BSP Div. of Envirotech Corp., 866 F.2d 661, 676 n. 19 (4th Cir. 1989); Floyd v. Country Squire Mobile Homes, Inc., 336 S.E.2d 502 (S.C. Ct. App. 1985).

Plaintiff has not set out sufficient facts to state a plausible claim that there was a contract. She has not set out what promises were made to her that may constitute an enforceable contract. In her opposition memorandum, Plaintiff argues that she has offered plausible facts of a unilateral employment contract between the parties. She discusses an employment handbook as a unilateral contract. Plaintiff's second amended complaint (as well as her original and proposed first amended complaint), however, do not reference any handbook and do not set forth any facts concerning a unilateral contract contained in a handbook. The original and first proposed amended complaint did not contain any exhibits. Attached to the second amended complaint, Plaintiff attached an offer letter that specifically stated that:

> we [Coldwater Management, LLC] recognize that you retain the option, as does the Company, of ending your employment with the Company at any time, with or without notice and with or without cause. As such, your employment with the Company is at-will and neither this letter nor any other oral or written representations may be considered a contract for any specific period of time.

13

AC2, Ex. 1. A cause of action for breach of contract accompanied by a fraudulent act cannot be recognized absent proof of an enforceable contract beyond employment-at-will. Dodgens v. Kent Mfg. Co., 955 F. Supp. 560, 567 (D.S.C. 1997).

    C.    <u>IIED (Fifth Cause of Action)</u>

        Plaintiff alleges a claim for IIED based on:

[a] The Defendants did intentionally and recklessly; sexually harass the Plaintiff as stated above both directly propositioning her and creating a hostile work environment; did verbally abuse, intimidate and cuss at the Plaintiff when she reported the above harassment to her supervisors and the Defendant's Vice President; did belittle the Plaintiff and cuss at her in the presence of other employees with no relation to the allegations of the harassment or hostile environment; did fire the Plaintiff without just cause or stated reason and then wrongfully object to the Plaintiff receiving unemployment benefits claiming a fraudulent reason for the termination; all with knowledge that such actions would result in the severe emotional distress of the Plaintiff.

[b] The Defendant's conduct was so extreme and outrageous that it exceeded all possible balance of decency and was furthermore atrocious, and utterly intolerable in civilized community.

[c] The actions of the Defendant caused the extreme and severe emotional distress of the Plaintiff and said emotional distress suffered by the Plaintiff was so severe that no reasonable person could be expected to endure it.

AC2 at 11-12. Defendant contends that this claim should be dismissed because it is preempted by the exclusive remedy found within the South Carolina Workers' Compensation Act, S.C. Code Ann. § 42-1-10 et seq. ("SCWCA").

Under the SCWCA, an employee's claims for intentional infliction of emotional distress against an employer are barred by the exclusive remedy provided under the SCWCA. See S.C. Code Ann. § 42-1-540; Dickert v. Metropolitan Life Ins. Co., 411 S.E.2d 672 (S.C.Ct.App. 1991), aff'd in part and rev'd on other grounds in part, 428 S.E.2d 700 (S.C. 1993); Taylor v. Cummings Atlantic, Inc., 852 F. Supp. 1279 (D.S.C. 1994), aff'd, 1995 WL 88957, 48 F.3d 1217 (4th Cir. March 6, 1995)[Table], cert. denied, 516 U.S. 864 (1995)(SCWCA provided former employee with exclusive

remedy against employer for claim of intentional infliction of emotional distress). Under circumstances where an intentional tort is committed by the employer or a tortfeasor is an "alter ego of the employer, employer liability may fall outside the scope of the Act." Peay v. U.S. Silicia Co., 437 S.E.2d 64 (S.C. 1993) ("only those injuries inflicted by an employer who acts with a deliberate or specific intent to injure are exempted from the exclusive remedy of the workers' compensation coverage."); see also Stewart v. McLellan's Stores Co., 9 S.E.2d 35 (S.C. 1940).

Plaintiff argues that her IIED claim is not preempted by the SCWCA because:

> Plaintiff is not alleging an injury by accident in relation to her intentional infliction of emotional distress claim but has alleged plausible facts of intentional and reckless conduct not only related to the harassment by a co-worker but also of a supervisor, who is a Vice President of the Defendant Company, was the registered agent for service in the State of South Carolina and is listed on corporate information as the Vice President Southern Division, the third most senior officer in the Defendant Corporation. This supervisor is clearly not a co-worker but a high level officer.

Plaintiff's Opp. Mem. at 10. She has attached a copy of a listing of certain employees of Defendant. Included on the list are two persons described as "Principal," and three persons described as "Vice President,"[7] and three persons described as "Director."

In the light most favorable to Plaintiff, she has presented plausible facts that the Vice President in question intentionally threatened and verbally abused her. She has also alleged sufficient facts that this person may be a dominant officer of the corporation. It is, therefore, recommended that Defendant's motion to dismiss be denied as to this claim.

---

[7] It appears that the Vice President in question is the Vice President of the Southern Division (the third person listed).

15

## PLAINTIFF'S MOTION TO DISMISS

On September 1, 2010, Plaintiff filed a motion to dismiss a number of Defendant's defenses asserted in its answer. Defendant contends that this motion should be denied because the motion is correctly characterized as a motion to strike under Rule 12(f) and is untimely. Additionally, Defendant argues that the Federal Rules do not require defenses to meet the Twombly/Iqbal standard. Plaintiff argues that her motion to dismiss should be granted because other district courts have applied Twombly/Iqbal to the legal sufficiency of defenses, if it is a 12(f) motion (rather than a 12(b)(6) motion) the court should interpret it as such and should excuse any late filing, and/or the court should strike the affirmative defenses on its own initiative for the sake of judicial economy.

It is recommended that Plaintiff's motion be denied as untimely. It appears that this motion, which seeks to disallow certain defenses, should be interpreted as a motion to strike pursuant to Rule 12(f),[8] rather than as a motion pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Under Rule 12(f), Plaintiff's motion is untimely, as it must be made within 21 days after being served with the pleading. The answer was filed (and served) on July 7, 2010, and Plaintiff did not file her motion until September 1, 2010.

Although, as argued by Plaintiff, some district courts have applied Twombly/Iqbal to defenses in an answer, she fails to show that the United States Supreme Court or the Fourth Circuit Court of Appeals has done so. Thus, it is recommended that the Court decline to apply the doctrine to defenses in an answer at this time.

---

[8]"The court may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

**CONCLUSION**

Based on the foregoing, it is ordered that Plaintiff's motion to amend (Doc. 8) is granted. Plaintiff's second motion to amend (Doc. 20) is granted in all respects, except as to the motion to add a claim under the SCPWA (Sixth Cause of Action).[9]  It is also recommended that Defendant's motion to dismiss (Doc. 5) be granted as to Plaintiff's claims for wrongful termination (Third Cause of Action) and Breach of Contact Accompanied by Fraud (Fourth Cause of Action), and be denied as to Plaintiff's IIED claim (Fifth Cause of Action).  Additionally, it is recommended that Plaintiff's motion to dismiss (Doc. 18) be denied.

Joseph R. McCrorey
United States Magistrate Judge

March 1, 2011
Columbia, South Carolina

---

[9]Defendant is directed to file an answer as to the Second Amended Complaint only.

17