# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | | |
|---|---|---|
| Lynn Marie Amason, ) | | C/A No. 3:10-1752-JFA |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | | **ORDER** |
| ) | | |
| PK Management, LLC, ) | | |
| ) | | |
| Defendant. ) | | |
| _____) | | |

This employment dispute is before the court upon Plaintiff Lynn Marie Amason's ("Plaintiff") objections to a United States Magistrate Judge's Report and Recommendation ("Report"), which recommends that this court grant in part and deny in part Defendant PK Management, LLC's motion to dismiss and to deny Plaintiff's motion to dismiss. Plaintiff filed this action against Defendant, contending that she was subjected to a sexually hostile work environment during her employment with Defendant and that she was ultimately terminated in violation of Title VII and state law. She also asserts a claim pursuant to the Fair Labor Standards Act. Having reviewed the entire record, including Plaintiff's objections, the court finds the Magistrate Judge fairly and accurately summarized the facts and correctly applied the principles of law applicable to this motion. Accordingly, the court adopts the Report in its entirety.

## BACKGROUND

Because this is a motion to dismiss, the Magistrate Judge adopted the factual allegations as stated by Plaintiff in her second amended complaint. Neither Plaintiff nor

Defendant has objected to his recitation; therefore, the court adopts the Report's factual allegations for purposes of this order.

Plaintiff began her employment with Defendant, a property management company, on or about December 26, 2007. She was hired as a property manager in Columbia, South Carolina, and Plaintiff accepted this position based on a promise that she would be promoted to Senior Property Manger within three months. Sometime within the first month of her employment, Defendant's Maintenance Director visited Plaintiff, and he stated that he came to see the new property manager, who was "so good looking." Then, during a February 18, phone call with Plaintiff, the Maintenance Director told her in a sexually suggestive manner that he "had something for her for her birthday." He also stated that the "had better stop before he got fired," to which Plaintiff replied, "That's right." Plaintiff reported the incident to her direct supervisor.

Plaintiff further alleges that in February of 2008, she was subjected to constant daily sexual propositions from one of the Defendant's male maintenance technicians. This included requests for sexual favors and explicit comments regarding her body parts. For example, he asked her to spend the night with him, talked to her about her body and her breasts, and told her how he could please and satisfy her. Plaintiff warned the technician that his remarks were inappropriate and reported this unwanted conduct to her Regional Supervisor, as well as Defendant's Vice President. In addition to Plaintiff's complaints, residents of the residential property managed by Plaintiff also made complaints of sexual harassment by these individuals to Defendant's Vice President. Plaintiff alleges that no action

was taken on these allegations and the sexual harassment continued. Plaintiff further alleges that on June 25, 2008, she was the only female in a group of nine male co-workers when the Maintenance Director began talking in a sexually explicit manner discussing female anatomy in Plaintiff's presence with another co-worker, stating that he "had been away from home for weeks" and wanted to perform certain sexual acts.

On or about February 25, 2008, Plaintiff's direct supervisor offered to promote her to Senior Property Manager, which was a supervisory position over multiple properties and over their respective on-site property managers. Before accepting the position, Plaintiff took the time to straighten out the Columbia property that she managed, and on or about March 26, 2008, she notified her supervisor that she thought the Columbia property site was reasonably stable and that she was ready to be promoted. According to Plaintiff, the promotion should have resulted in the hiring of an on-site property manager at the Columbia location, and Plaintiff expected to be responsible for supervising the on-site managers in Columbia and other locations. The Plaintiff was led to believe she would interview and fill the Columbia site manager position after she was promoted, but her supervisor indicated that she needed to talk to the Vice President and would get back in touch with her.

On or about April 4, 2008, Plaintiff again discussed the promotion with her supervisor, and the supervisor informed Plaintiff that she was doing a good job. Meanwhile, the Columbia maintenance technician continued making inappropriate sexual advances toward Plaintiff, and again, Plaintiff warned him of the inappropriateness of his remarks and notified her supervisor about his conduct. Plaintiff alleges that the maintenance technician

began showing up late for work, calling and leaving voice mail messages rather than speaking to the Plaintiff directly or not showing up for work at all. Apparently Plaintiff did not have the authority to terminate this employee.

On approximately April 13, 2008, Plaintiff was informed by her supervisor and the Vice President that she was being promoted to Senior Property Manager over the Columbia, Walterboro, Manning, and Orangeburg properties. Approximately one week later, Plaintiff asked her supervisor when she could begin interviewing to fill the on-site manager position in Columbia. She was told by her supervisor that the she would have to cover the position for "a little while," but that a new manger for Columbia would be hired. Then, on or about April 24, 2008, Plaintiff received a Human Affairs Complaint from a resident, who claimed she was discriminated against and overcharged for her rent based on a company form relating to her income that the resident had to complete. The compliant was faxed to Plaintiff's direct supervisor, who assisted the Plaintiff in responding to the complaint. A copy of the response was faxed back to Plaintiff's direct supervisor and the Defendant's Vice President. The investigation by Human Affairs also resulted in multiple phone conversations between Human Affairs, the Plaintiff, and Plaintiff's supervisor. On or about July 22, 2008, Plaintiff contacted the Vice President and requested a check for the overpaid funds of the resident. Plaintiff claims the Vice President responded by screaming at her, by cursing at her, and by threatening her. Plaintiff claims this was done in retaliation for her reporting harassment. Plaintiff claims the Vice President then scheduled an on-site inspection visit for no apparent reason, which was performed on or about July 23, 2008. At the inspection, however, the Vice

President indicated that she was "impressed" with the Columbia site and that the site "looked better than it ever had."

It appears that at some later date, Plaintiff's vehicle was damaged while on Defendant's property by a resident of the property, who was being evicted, and Defendant refused to reimburse Plaintiff for the damages suffered by her vehicle. Moreover, Plaintiff was forced to perform the work load of multiple individuals, as Defendant did not permit Plaintiff to hire an assistant or hire on-site property managers when she was promoted to Senior Property Manager, despite the fact that similarly situated employees had assistants. Plaintiff believes this was done in retaliation for her reporting of sexual harassment and a hostile work environment and was an attempt to force her to resign. Ultimately, on or about July 25, 2008, Plaintiff was terminated and given no reason for her termination. When she applied for unemployment, Defendant's Vice President claimed that Plaintiff was terminated for the resident complaint discussed above, but Plaintiff asserts that this reason is false.

Plaintiff further explains that, when she was hired as a property manager, she was informed that she would be paid $36,000 a year, without regard for hours worked. During her employment at this position, she claims she was required to work in excess of 40 hours per week and 80 hours bi-weekly. Nevertheless, Plaintiff was required to submit a time card to headquarters, which indicated that she worked eight hours a day, as any time card stating time in excess of 40 hours a week was rejected by Defendant. According to personnel forms, Defendant classified Plaintiff as being "non-exempt," presumably from the provisions of the Fair Labor Standards Act. After her promotion to Senior Property Manger, Plaintiff claimed

she was responsible for overseeing the Columbia, Walterboro, Manning, and Orangeburg properties, while also still serving as the on-site property manager of the Columbia property, which required more than 40 hours of work per week. Nevertheless, Plaintiff was required to submit time cards incorrectly reflecting the facts that she worked eight hours a day, 40 hours a week, and 80 hours in a bi-weekly time period, even though she worked more than 40 hours per week. Plaintiff claims that Defendant was aware of her two job positions, but refused to hire a replacement for the Columbia property manager position.

As already noted above, Plaintiff filed suit against Defendant in this court, asserting several Title VII claims and a claim pursuant to the Fair Labor Standards Act. Plaintiff also asserted claims for wrongful termination, breach of contract accompanied by a fraudulent act, and intentional infliction of emotional distress, and Defendant moved the court to dismiss these state law claims pursuant to Federal Rule of Civil Procedure 12(b)(6). In response, Plaintiff filed her own motion to dismiss Defendant's affirmative defenses. After considering the parties' briefs with respect to both motions, the Magistrate Judge recommends that this court dismiss Plaintiff's claims for wrongful termination and for breach of contract accompanied by a fraudulent act, but deny Defendant's motion to dismiss as it relates to Plaintiff's claim for intentional infliction of emotional distress. The Magistrate Judge further recommends that this court deny Plaintiff's motion to dismiss the Defendant's affirmative defenses. Plaintiff objects to the Magistrate Judge's Report.

## STANDARD FOR REVIEWING MAGISTRATE JUDGE'S REPORT

The Magistrate Judge made his review in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02. The Magistrate Judge only makes a recommendation to the court. It has no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). Parties are allowed to make a written objection to a Magistrate Judge's Report within fourteen days after being served a copy of the report. 28 U.S.C. § 636(b)(1). From the objections, the court reviews de novo those portions of the Report that have been specifically objected to, and the court is allowed to accept, reject, or modify the Report. *Id.*

## LEGAL STANDARD TO DISMISS A CLAIM PURSUANT TO RULE 12(b)(6)

When considering a 12(b)(6) motion to dismiss, the court must accept as true the facts alleged in the complaint and view them in a light most favorable to the plaintiffs. *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999). The United States Supreme Court has stated that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

7

Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557). Accordingly, Plaintiffs must put forth claims that crosses "the line from conceivable to plausible." *Id.* at 1950–51 (internal quotation omitted).

## **ANALYSIS**

The Magistrate Judge specifically recommended that the court dismiss Plaintiff's causes of action for wrongful termination and breach of contract accompanied by a fraudulent act, as well as deny Plaintiff's motion to dismiss Defendant's affirmative defenses. Plaintiff has objected to these recommendations. The Magistrate Judge also recommended that the court deny Defendant's motion to dismiss with respect to Plaintiff's intentional infliction of emotional distress claim. Defendant did not object to this finding; therefore, the court adopts it as its own.

### **I.     Breach of Contract Accompanied by a Fraudulent Act**

In her amended complaint, Plaintiff asserts the following cause of action for breach of contract accompanied by a fraudulent act:

> 43. The Defendant made specific promises to the Plaintiff regarding her employment; and said promises constitute an enforceable contract under South Carolina common law.
>
> 44. The Defendant, by and through its agents and employees, intentionally violated the above contract and agreement and concocted fraudulent reasons to support its reasoning for breaching its contractual obligations to the Plaintiff.

> 45. As a direct and proximate result of the unlawful, intentional and reckless actions of the Defendant which injured the Plaintiff, the Plaintiff is informed and believes she is entitled to actual damages and punitive damages against the Defendant.

(Am. Compl. ¶¶ 43–45.) After listing the elements a plaintiff must show to establish this cause of action, the Magistrate Judge recommended dismissing this claim because he concluded that Plaintiff had not set out sufficient facts to state a plausible claim that there was a contract in this case. (Report at 13.) To support his conclusion, the Magistrate Judge pointed out that although Plaintiff discussed the possibility of a unilateral contract created by an employment handbook, Plaintiff had not referenced any specific provisions of a handbook or set forth any fact concerning a unilateral contract contained in a handbook. (*Id.*) Moreover, the Magistrate Judge quoted language from Plaintiff's offer letter, which specifically stated that her employment with Defendant was at-will and not a contract for any specific period of time. (*Id.*) Without proof of an enforceable contract beyond an at-will employment relationship, the Magistrate Judge concluded that Plaintiff's cause of action for breach of contract accompanied by a fraudulent act must fail.

In her objections, Plaintiff argues that she is not required to offer proof of an employment contract at this stage of the proceedings. She also contends that her amended complaint contains sufficient factual allegations to establish a contractual relationship between Plaintiff and Defendant. To support her argument that she has plead sufficient facts to establish the existence of a contract in this case, Plaintiff quotes language from her offer letter, which she attached to her amended complaint. The letter stated:

> In addition to your compensation, you will be eligible to receive the benefits which are offered to all Full-Time [Defendant] employees. These benefits are described in the enclosed materials. We also have enclosed a copy of the employee handbook, which describes the Company's policies and procedures that will govern certain aspects of your employment. Please be sure to review the handbook and sign and return the acknowledgment of receipt page at the end of the handbook.

(Objections at 6) (quoting Am. Compl. Ex. 1.) Plaintiff contends that she does not need to attach the handbook to her complaint to put the Defendant on notice that its handbook could be construed by a jury as an employment contract. Plaintiff also contends that the oral assurances made to her, considered in light of her offer of employment and any amendments to the handbook, sufficiently pleads the existence of an employment contract. (*Id.*)

After considering Plaintiff's objections, the court disagrees with Plaintiff's argument, and adopts the Magistrate Judge's ruling with respect to this claim. Although Plaintiff's offer of employment did mention the existence of an employee handbook that would govern certain aspects of Plaintiff's employment with Defendant, the same offer of employment stated:

> We greatly look forward to having you join our Company and become a member of our team. However, we recognize that you retain the option, as does the Company, of ending your employment with the Company at any time, with or without notice and with or without cause. As such, your employment with the Company is at-will and neither this letter nor any other oral or written representations may be considered a contract for any specific period of time.

(Am. Compl. Ex. 1.) Moreover, Plaintiff signed this offer of employment, which acknowledged that she "agree[d] to the terms of the employment" set forth in the offer of employment, including her at-will status with Defendant. (*Id.*) Plaintiff argues that, under

10

South Carolina law, an employee has a cause of action against an employer who contractually alters the at-will relationship and terminates the employee in violation of the contract. Even so, Plaintiff has not made such a factual allegation in this case. Nothing in her complaint asserts that her handbook altered the terms of her at-will employment, as quoted above, nor does any allegation in her complaint assert what specific time period her employment contract covered. Rather, Plaintiff's complaint merely sets forth labels and conclusions, and a formulaic recitation of the elements of a cause of action, which the Supreme Court has made clear will no longer suffice. *Twombly*, 550 U.S. at 555.

A claim for breach of contract accompanied by a fraudulent act requires that the plaintiff first establish a breach of contract. *Conner v. City of Forest Acres*, 348 S.C. 454, 560 S.E.2d 606, 612 (S.C. 2002). Since Plaintiff has failed to plead sufficient factual allegations to establish the existence of an employment contract beyond the at-will relationship, Plaintiff's claim of breach of contract accompanied by a fraudulent act fails at the outset. Therefore, the court grants Defendant's motion to dismiss with respect to this claim.

**II.    Wrongful Termination**

In her amended complaint, Plaintiff also asserts the following wrongful termination cause of action:

> 39. All allegations of the Paragraphs hereinabove are incorporated herein as if fully repeated verbatim.
>
> 40. On or about July 25, 2008, the Plaintiff was terminated from her position without good cause and said termination constituting a wrongful discharge as follows:

>    a.   the termination was arbitrary, discriminatory, and unfair, in that such termination was not based on a fair, objective, uniform and reasonable standard;
>
>    b.   the termination breached an employment contract between the parties and the implied covenant of good faith and fair dealing;
>
>    c.   the termination breached an implied contract between the parties and the implied covenant of good faith and fair dealing;
>
>    d.   the termination was in violation of public policy.
>
> 41. As a direct and proximate result of the unlawful, intentional and reckless conduct of the Defendant which injured the Plaintiff, the Plaintiff is informed and believes she is entitled to actual damages and punitive damages against the Defendant.

(Am. Compl. ¶¶ 39–41.) In his Report, the Magistrate Judge recommended that the court dismiss this cause of action in its entirety, but in doing so, he limited the majority of his analysis to whether or not Plaintiff stated a plausible wrongful termination claim in violation of public policy. In her objections, Plaintiff makes it clear that she does not object to the Magistrate Judge's recommendation that the court dismiss her wrongful termination claim based on a public policy violation—subsection (d) cited above—as well as her wrongful termination claim based on her argument that the termination was not based on a reasonable standard—subsection (a) also cited above. Therefore, the court adopts the Magistrate Judge's finding as to these allegations and dismisses them.

Plaintiff does, however, object to the Magistrate Judge's recommendation that the court dismiss her claim for wrongful termination based on breach of an express contract or an implied contract—subsections (b) and (c) cited above. She contends that the Defendant

did not move to dismiss these claims in its motion to dismiss and that she has sufficiently pled a cause of action for wrongful termination based on an express or implied employment contract. Although neither the Defendant or the Magistrate Judge directly addressed these claims raised by Plaintiff, it appears they both elected not to do so based on their respective beliefs and findings that Plaintiff merely had an at-will employment status with Defendant. As this court found above, Plaintiff has not sufficiently pled the existence of an employment contract, which altered her at-will employment status with Defendant. She merely has argued that Defendant had a handbook, but she has not alleged any provision in the handbook that entitled her to a specified term of employment or any other right that would have made her termination wrongful. Nor has Plaintiff alleged any oral assertions made by Defendant that would have altered her at-will status with Defendant. As such, the court adopts the Magistrate Judge's Report and dismisses this claim.

Plaintiff further requests the court to allow her to amend her complaint a third time to "plead with specificity the alleged contract itself pursuant to the Federal pleading standards not the state court pleading standards which governed the initial Complaint but were not at issue in regard to the cause of action for wrongful discharge due to breach of employment contract." (Objections at 11.) The court denies this request. Plaintiff has already amended her complaint two times, and both amendments occurred after this case was removed to federal court. Therefore, Plaintiff had ample opportunity to correct any pleading deficiencies that she thought might have existed in her complaint.

**III.     Plaintiff's Motion to Dismiss Defendant's Affirmative Defenses**

Plaintiff filed her own motion to dismiss in this case, in which she asks the court to dismiss several affirmative defenses asserted by Defendant in its answer to her complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Magistrate Judge, at the Defendant's request, interpreted the motion as a motion to strike pursuant to Rule 12(f), rather than a motion to dismiss pursuant to Rule 12(b)(6). In doing so, the Magistrate Judge expressed uncertainty as to whether or not the Supreme Court's opinions in *Twombly* and *Iqbal* applied to defenses asserted in an answer, and he noted that Rule 12(f)(2) specifically states that "[t]he court may strike from a pleading an insufficient defense . . . on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Because Defendant filed and served its answer to Plaintiff's complaint on July 7, 2010, and because Plaintiff did not file her motion to dismiss until September 1, 2010, the Magistrate Judge concluded that the motion was untimely and recommends the court to deny it on this ground. (R&R at 16.)

Plaintiff objects to this finding and contends that the court should take up her motion. Although it does not appear that the Fourth Circuit Court of Appeals or the United States Supreme Court has addressed this specific issue, she does cite to several district courts in this circuit, as well as cases from other circuits, that have applied the *Twombly-Iqbal* standard to affirmative defenses raised in a defendant's answer. For example, Plaintiff cites to *Francisco v. Verizon South, Inc.*, in which a United States District Court from the Eastern District of Virginia applied the *Twombly-Iqbal* standard to the affirmative defenses plead by a defendant

in the case. *Francisco v. Verizon South, Inc.*, No. 3:09-737, 2010 WL 2990159, at **7–8, 2010 U.S. Dist. LEXIS 77083, at *24 (E.D. Va. July 29, 2010). Notwithstanding the *Francisco* court's ruling, it also designated the motion before it in that case as a motion to strike pursuant to Rule 12(f), and this court finds the Magistrate Judge correctly did the same in this case. Therefore, the court finds that Plaintiff untimely filed her motion to strike, as it is subject to the 21-day time period set forth in Rule 12(f). Accordingly, the court denies Plaintiff's motion to dismiss/motion to strike. It should be noted, however, that Plaintiff has since filed a renewed motion to dismiss/motion to strike the affirmative defenses asserted by Defendant in its amended answer. The court expresses no opinion as to the merits of that motion, as it has been properly referred to the Magistrate Judge for consideration.

## CONCLUSION

For the foregoing reasons, the court adopts the Magistrate Judge's report in its entirety. In doing so, the court grants Defendant PK Management, LLC's motion to dismiss in part and denies it in part, and it denies Plaintiff's motion to dismiss/motion to strike.

IT IS SO ORDERED.

March 23, 2011  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge